**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| MICHAEL C., O/B/O E.K.C.,[1] | : Case No. 3:20-CV-511 |
| Plaintiff, | : Magistrate Judge Peter B. Silvain, Jr. : (by full consent of the parties) |
| vs. | : |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

Plaintiff Michael C. brings this case challenging the Social Security Administration's denial of E.K.C.'s applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.[2] The case is before the Court upon Plaintiff's Statement of Errors (Doc. #15), the Commissioner's Memorandum in Opposition (Doc. #18), Plaintiff's Reply (Doc. #19), and the administrative record (Doc. #11).

**I.    Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] *See* Suggestion of Death, (Doc. #13), filed on August 9, 2021.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, E.K.C. applied for benefits on August 24, 2017, due to several impairments, including diabetes, arachnoiditis, and neuropathy. After E.K.C.'s applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Gregory M. Beatty. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] He reached the following main conclusions:

Step 1: E.K.C. has not engaged in substantial gainful activity since the alleged onset date.

Step 2: Since the alleged onset date of disability, January 1, 2013, E.K.C. has had the following severe impairments: arachnoiditis, status post L5-S1 discectomy, Chronic Obstructive Pulmonary Disease (COPD), diabetes mellitus, peripheral neuropathy, carpal tunnel syndrome, Post-Traumatic Stress Disorder (PTSD), depressive disorder, bipolar disorder, substance addiction disorder, congestive heart disease, and ischemic heart disease.

Step 3: Since January 1, 2013, E.K.C. has not had an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), since January 1, 2013, consisted of "light work [] except: She can frequently [] handle and finger with the right hand. She [can] occasionally feel with the right hand. [E.K.C.] could perform frequent pushing and/or pulling with the right upper extremity and left lower extremity. [E.K.C.] can climb ramps and stairs occasionally, but can never climb ladders, ropes, or scaffolds. She can balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. [E.K.C.] can never work at unprotected heights, never work

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

>   around moving mechanical parts, and never operate a motor vehicle. She must avoid concentrated exposure to humidity and wetness, dust, odors, fumes, pulmonary, extreme cold, and extreme heat. She is able to perform simple, routine and repetitive tasks but not at a production rate pace. She is able to perform simple work-related decision. [E.K.C.] is able to interact with supervisors, coworkers, and the public on an occasional basis. She is able to tolerate few changes in a routine work setting."
>
>   Since January 1, 2013, E.K.C. has been unable to perform any past relevant work.
>
> Step 5: Prior to October 25, 2019, considering E.K.C.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that E.K.C. could perform.
>
>   Beginning October 25, 2019, considering E.K.C.'s age, education, work experience, and RFC, there were no jobs existing in significant numbers in the national economy that E.K.C. could perform.

(Doc. #11-2, *PageID* #s 53-63). Based on these findings, the ALJ concluded that E.K.C. was not disabled prior to October 25, 2019, but she became disabled on that date and had continued to be disabled.[4] Her disability was expected to last twelve months past the onset date. *Id.* at 63. The ALJ also determined that E.K.C. was not under a disability within the meaning of the Social Security Act at any time through December 31, 2015, her date last insured. *Id.*

The evidence of record is adequately summarized in the ALJ's decision (Doc. #11-2, *PageID* #s 55-63), Plaintiff's Statement of Errors (Doc. #15), and the Commissioner's Memorandum in Opposition (Doc. #18). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

---

[4] Prior to the established disability onset date, E.K.C. was an individual closely approaching advanced age. On October 25, 2019, E.K.C.'s age category changed to an individual of advanced age. E.K.C. passed away in February 2021. (Doc. #15, *PageID* #4075).

**II.     Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.    Discussion**

In his Statement of Errors, Plaintiff alleges that the ALJ erred in finding that E.K.C. could perform light exertional work prior to October 25, 2019. (Doc. #15, *PageID* #4078). Specifically, Plaintiff argues that the evidence of record was most consistent with the opinion of E.K.C.'s primary care source, Nurse Ritenour, who opined that E.K.C. was limited to sedentary work prior

4

to December 31, 2015. *Id*. at 4080. Plaintiff then cites to numerous pieces of medical evidence demonstrating E.K.C.'s chronic pain, back and hip problems, and mental difficulties. *Id*. at 4078-80. The Commissioner maintains that the ALJ properly accommodated all of E.K.C.'s substantiated limitations and his ultimate determination that she was not disabled prior to October 25, 2019 is supported by substantial evidence. (Doc. #18).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 404.1527. Because Plaintiff's claim for disability was filed in April 2017, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Previously, the Social Security Administration followed the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013).

However, the new regulations changed this standard for applications filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." § 404.1520c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support

5

or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c). Further, because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 404.1520c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." § 404.1520c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." § 404.1520c(c)(2).

Thus, while these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)).

In this case, Plaintiff alleges that the ALJ erred in his assessment of E.K.C.'s RFC and that the medical evidence was most consistent with the opinion of E.K.C.'s primary care source, Certified Nurse Practitioner (CNP) Grenetta Linn Ritenour. (Doc. #15, *PageID* #4080). Plaintiff, however, fails to explain which limitations Plaintiff believes were improperly omitted from the RFC.

The records contain several letters from Nurse Ritenour attesting to her treatment of E.K.C. and that she was unable to work due to medical problems or treatment during several periods in 2016 and 2017. (Doc. #11-19, *PageID* #s 2982-93). In reviewing these letters, ALJ Beatty correctly observed that such letters did not contain any specific limitations or reasons and were unpersuasive as they only addressed an issue reserved for the Commissioner. (Doc. #11-2, *PageID* #s 58-59); *see also Quisenberry v. Comm'r of Soc. Sec.,* 757 F. App'x 422, 434 (6th Cir. 2018) (finding that an ALJ may properly reject a vague opinion that does not provide any specific functional limitations).

However, in addition to these letters, Nurse Ritenour completed a "Medical Assessment of Ability To Do Work-Related Activities (Physical)" form on September 12, 2019. (Doc. #11-21, *PageID* #s 3558-62). In this assessment, Nurse Ritenour indicated that E.K.C.'s arachnoiditis limited her to carrying 5 pounds occasionally and 2.5 pounds frequently. *Id*. at 3559.  She also noted that "long-term" standing and walking caused E.K.C. pain but did not provide a specific duration that she would be capable of performing on a daily basis. *Id*. Similarly, Nurse Ritenour provided that E.K.C.'s arachnoiditis causes increased prolonged pain when sitting and so she would frequently reposition when she sits for longer than 30 minutes at a time. *Id*. at 3559-60. She

opined that E.K.C. could never crawl but could occasionally climb, balance, crouch, and kneel. *Id*. at 3560. Nurse Ritenour also indicated that E.K.C. was limited in her ability to reach, push, and pull because of her chronic back issues. *Id*. She did not believe that E.K.C. required any environmental restrictions. *Id*. at 3561. Finally, Nurse Ritenour confirmed that all of these limitations existed prior to December 2015 and opined that Plaintiff would be limited to sedentary work, meaning that she could lift and carry a maximum of 10 pounds, primarily sit, and occasionally walk and stand. *Id*.

In reviewing this assessment, ALJ Beatty ultimately found it "not persuasive nor supportable[.]" (Doc. #11-2, *PageID* #59). He explained that Nurse Ritenour's opinion was internally inconsistent and that she failed to provide clinical or objective findings to support her proposed limitations. *Id*. He also pointed out that Nurse Ritenour's opined limitations for standing, walking, and lifting were "not consistent with normal strength, relatively normal objective findings according to the surgeon who operated on [E.K.C.'s] spine, and lack of evidence that a walker was required beyond surgical (hip) recovery for a few months." *Id*. Finally, ALJ Beatty concluded that, contrary to Nurse Ritenour's opinion that she did not have any environmental limitations, her COPD and evidence of addictions necessitated restrictions in pulmonary irritants and hazards. *Id*.

The ALJ's explanation for finding Nurse Ritenour's opinion unpersuasive is clearly articulated and supported by substantial evidence. The ALJ specifically discussed the two most important factors listed in 20 C.F.R. § 404.1520c—supportability and consistency. He pointed out discrepancies in Nurse Ritenour's opinion, such as her finding that E.K.C. could sustain full-time

8

sedentary exertional work, including lifting/carrying up to 10 pounds, which contradicted her finding that E.K.C. could lift no more than 2.5 to 5 pounds. Similarly, the ALJ pointed out the lack of clinical or objective findings used by Nurse Ritenour to support her proposed limitations. Finally, ALJ Beatty found that Nurse Ritenour's opined limitations for standing, walking, and lifting were not consistent the other objective evidence of record and that she required environmental limitations that Nurse Ritenour did not consider.

Further, there is substantial evidence to support the ALJ's decision regarding Plaintiff's RFC limitations. For example, the ALJ considered other opinion evidence in rendering his decision, including the opinions of the state agency consultants, Mehr Siddiqui, M.D., and Anton Freihofner, M.D. (Doc. #11-2, *PageID* #60).

Dr. Siddiqui reviewed E.K.C.'s medical records in August 2017 and found that she could perform light exertional work, including occasionally lifting or carrying 20 pounds, frequently lifting or carrying 10 pounds, standing about 6 hours in an 8-hour workday, and standing or walking about 6 hours in an 8-hour workday. (Doc. #11-3, *PageID* #148). He also opined that her ability to push and pull was limited in her right upper extremities and in her left lower extremities due to her carpal tunnel and neuropathy in her right hand, x-rays showing severe arachnoiditis and dural thickening, prominent sac compression at L4-5, history of a discectomy at L5-S1, and decreased sensation in her left lower extremities. *Id*. Dr. Siddiqui opined that E.K.C. frequently climb ramps and stairs but only occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. *Id*. at 148-49. He also indicated that she should avoid all exposure to unprotected heights or hazards due to her polyneuropathy. *Id*. at 150. Similarly, Dr. Freihofner reviewed

E.K.C.'s medical records in May 2018 and affirmed the same limitations provided by Dr. Siddiqui for the period from April 24, 2017 onward. *Id*. at 172-76.

In reviewing these opinions, the ALJ concluded that they were "persuasive and supportable[.]" (Doc. #11-2, *PageID* #s 60). In support, the ALJ noted that the limitations were "consistent with clinical findings or normal strength and relatively normal objective imaging since surgeries." *Id*. He did, however, find that additional environmental limitations were merited due to E.K.C.'s COPD diagnosis. *Id*.

Accordingly, the ALJ properly relied on the opinions of the state agency medical consultants in assessing Plaintiff's RFC, and their opinions constitute substantial evidence to support the ALJ's decision. Since there is substantial evidence to support the ALJ's decision, this Court will not disturb the Commissioner's findings.

The ALJ's formulation of E.K.C.'s mental limitations in her RFC is likewise supported by substantial evidence. In formulating E.K.C.'s mental RFC, ALJ Beatty imposed a number of restrictions, including (1) performance of simple, routine, and repetitive tasks but not at a production rate pace; (2) performance of simple work-related decisions; (3) interaction with supervisors, coworkers, and the public on an occasional basis; and (4) ability to tolerate few changes in a routine work setting. (Doc. #11-2, *PageID* #54). In formulating these restrictions, ALJ Beatty relied on evidence, including E.K.C.'s complaints, medical records, the opinions of consultative psychological examiner Larry C. James, Ph.D., and the opinions of the state agency reviewing sources, Courtney Zeune, Psy.D. and Joseph Edwards, Ph.D. *Id*. at 59-60; s*ee also* 20 C.F.R. § 404.1545(a)(3) (stating that RFC assessments should be "based on all of the relevant

medical and other evidence"). Indeed, in reviewing the opinions from these sources, the ALJ found each to be generally persuasive and supportable and, therefore, incorporated their recommended limitations in the RFC. *See id*. at 54-60.

Finally, while it is true that the ALJ's decision must be supported by substantial evidence, it is Plaintiff who "bears the burden of proving the existence and severity of limitations caused by [the claimaint's] impairments" through step four of the sequential evaluation process. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Accordingly, it is Plaintiff's burden to prove that E.K.C. had a more restrictive RFC than that assessed by the ALJ. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999)). Plaintiff, however, does not indicate through citations to the record evidence or through factual or legal analysis what functional limitations caused by E.K.C.'s mental impairments are not already accounted for in the RFC. Thus, to the extent that Plaintiff challenges the ALJ's formulation of E.K.C.'s mental restrictions, it is without merit.

Based on the foregoing, Plaintiff's challenges to the ALJ's decision are not well taken.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #15) is **DENIED;**

2. The Commissioner's partially favorable determination be **AFFIRMED**; and

3. The case be terminated on the docket of this Court.

August 22, 2022                          *s/Peter B. Silvain, Jr.*
                                                           Peter B. Silvain, Jr.
                                                           United States Magistrate Judge